JAMES McNAIR THOMPSON
SBN 67807
LAW OFFICES OF JAMES McNAIR THOMPSON
PO BOX 636
LOS GATOS CA 95031
(408) 358-6047
Attorney for defendant Ibrahim

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HASAN IBRAHIM,<br><br>Defendant. | Case No.: CR – 11—00811 – EMC<br><br>DEFENDANT IBRAHIM'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS MOTION TO DISMISS COUNTS 2-9 FOR MULTIPLICITY<br><br>DATE:  AUGUST 21, 2013<br>TIME:  2:30 P.M.<br>DEPT:  COURTROOM 5, 17TH FLOOR<br>HON. EDWARD M. CHEN, PRESIDING |

## I.  INTRODUCTION

Defendant Ibrahim filed a motion to dismiss Counts 2 through 9 of the Superseding Indictment as multiplicitous of Count 1.  (Doc. 161)  The government filed an opposition, arguing that because the word "a" precedes the words "destructive substance" in 18 U.S.C. §32(a)(2), the substances necessarily can be independently charged and necessarily can support separate convictions.  (Doc. 168; see 2:19 – 3:5)

[Type text]                                                                                                                        Page 1

## II. THE GOVERNMENT'S ASSERTION THAT IT ARGUED THAT EACH CHEMICAL WOULD HAVE ENDANGERED AN AIRCRAFT IS IRRELEVANT, IN THAT THE GOVERNMENT HAS ALSO ADMITTED THAT THE COMBINATION OF CHEMICALS WOULD HAVE ENDANGERED AN AIRCRAFT

Defendant had argued that even if the jurors thought that any given substance was not likely to endanger an aircraft, they were authorized to convict the defendant if they thought the combination of substances were likely to endanger an aircraft.

> Where, as here, the government sought to prove that the defendant likely endangered an aircraft by placing one shipment containing the "chemical matter" of Chloroacetonitrile, Sulfuryl Chloride, Oxalyl Chloride, N, N-Dimethylformamide Dimethyl Acetal, Sodium Hydride, 3.0 N HCL in n-Butanol, Chloroacetophenone, 2-Ethoxyethanol and Acetonitrile in proximity to each other, there can be but one count.
> It is impossible to know whether the jurors thought that sodium hydride was a "destructive substance" "likely to endanger an aircraft" by virtue of its own characteristics, or whether the jurors thought that sodium hydride was a "destructive substance" "likely to endanger an aircraft" only by virtue of its being a constituent part of a single shipment. (Doc. 161 8:3 – 14)

The government says that it "specifically argued that the characteristics of each of the nine destructive substances charged in Counts 1 through 9 individually would have endangered the safety of the aircraft." (Doc. 168 3:18 – 20) That might be pertinent if the government had not also adduced evidence that, and argued that, the hazard posed by the shipment was greater because of the juxtaposition of the substances. The government admits in its opposition to the defendant's motion that its position is that "the proximity of the nine destructive substances contained in the same shipment aggravated the danger was simply another factor for the jury to consider." (Doc. 168 3:20 – 21)

This argument concerning the effect of the proximity of the nine chemicals to each other is so central to the government's argument about whether the shipment

was "likely to endanger" an aircraft that they repeated it in their opposition to defendant motion for a judgment of acquittal under Fed. R. Crim. P. Rule 29:

> The evidence established that each of the charged substances presented a danger based, among other reasons, on the inherent properties of the material, on the way the material was packaged in non-conforming packaging without the required protective components and without hazardous material labels on the exterior of the box, **and in proximity to other hazardous materials**. (Doc. 169 12:25 – 13:3; emphasis added and using the ECF pagination)

While the government admits that it attempted to prove, and that it argued, that "the proximity of the nine destructive substances contained in the same shipment aggravated the danger was simply another factor for the jury to consider," it ignores the effect of the jurors consideration of the proximity of the substances.

Since the jurors were required to find that the substances were "likely to endanger an aircraft," and since the government admits that it could, under the instructions and evidence, consider the proximity of the other substances to each substance to determine that the shipment as a whole was likely to endanger an aircraft, the government has conceded the essential fact compelling the granting of this motion[1] – the verdicts on Counts 1 – 9 cannot be said to be based upon anything other than the jurors assessment of the risks created by the shipment as a whole.

That is the central point of the defendant's motion, and one that the government addresses only by conceding it.

---

[1] Defendant believes the Court should grant his motion for a judgment of acquittal on Counts 1 through 9, but also provisionally grant this motion and the Rule 33 motion on Counts 1 through 9.

[Type text] Page 3

Since the jurors were invited to convict defendant on Count 1 because of the presence of the substances in Counts 2 through 9 in proximity to the Chloroacetonitrile alleged in Count 1, Counts 2 through 9 are multiplicitous.

The jurors were invited to convict the defendant on Count 1 even if they did not find that the Chloroacetonitrile, standing alone, would have likely endangered the safety of an aircraft, so long as they found that the shipment as a whole likely endangered the safety of an aircraft.

### III. THE SHIPMENT WAS IN FACT ONE COMPLETE STRUCTURE

The government argues that defendant's hypothetical argument about the component substances in a hypothetical bomb is inapposite because a bomb is a destructive device not a destructive substance. (Doc. 168 3:13 – 16)

While this argument misses, perhaps evades, the defendant's point that the hypothetical bomb was constructed of more than one substance, the more interesting response is what immediately follows in the government's opposition. "Here, however, the individual substances are not part of one complete structure and thus are properly charged separately." (Doc. 168 3:16 – 17)

That is neither conceptually nor literally true.

The shipment was loaded on a pallet, and shipping was deferred until a pallet could be filled. The jurors were shown pictures of how the various pallets fit into an airplane cargo hold, and testimony established that the shipment was intended to be sent as a pallet. The next to last witness, John Beyer, testified that the 64 boxes which comprised the shipment were in 5 pallets.

While the defendant does not believe that the government could have charged on count for each pallet containing one or more "destructive substance," it certainly cannot charge 9 counts for one shipment which the government has argued to the

jurors is "likely to endanger an aircraft" by virtue of its total composition as a shipment.

## IV.  CONCLUSION

For the reasons stated above, the Court must dismiss Counts 2 through 9 of the Superseding Indictment, even though it should also enter a judgment of not guilty on Counts 1 through 9.

Dated:  August 17, 2013

                                      Respectfully submitted,

                                      James McNair Thompson

                                      Attorney for defendant Ibrahim